# EXHIBIT 1

| | | |
|---|---|---|
| **SUMMONS - CIVIL**<br>JD-CV-1    Rev. 6-11<br>C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,<br>52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1 | **STATE OF CONNECTICUT**<br>**SUPERIOR COURT**<br>www.jud.ct.gov | **See page 2 for instructions** |

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☒ "X" if claiming other relief in addition to or in lieu of money or damages.

**TO:** Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* *(C.G.S. §§ 51-346, 51-350)*<br>**1 Court Street, Middletown, CT 06457-3374** | Telephone number of clerk *(with area code)*<br>**( 860 )343-6400** | Return Date *(Must be a Tuesday)*<br>**July**  ___Month___  **31**  ___Day___  **2012**  ___Year___ |
|---|---|---|
| ☒ Judicial District      ☐ Housing Session    G.A. Number: | At *(Town in which writ is returnable)* *(C.G.S. §§ 51-346, 51-349)*<br>**Middletown** | Case type code *(See list on page 2)*<br>Major: **C**      Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)*<br>**Robert J. Nichols, Attorney at Law    21 Main Street, 4th Floor, Waterbury, CT 06702** | Juris number *(to be entered by attorney only)*<br>**042869** |
|---|---|
| Telephone number *(with area code)*<br>**( 203 ) 753-5503** | Signature of Plaintiff *(If self-represented)* |

| Number of Plaintiffs: **2** | Number of Defendants: **19** | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name: Bowser, Anthony C.<br>Address: 476 Main Street, Old Saybrook, Connecticut 06476 | P-01 |
| **Additional Plaintiff** | Name: Bowser, Joan H.<br>Address: 476 Main Street, Old Saybrook, Connecticut 06476 | P-02 |
| **First Defendant** | Name: Goslin,  Christopher L.<br>Address: J. P. Turner & Company LLC, 1211 North Westshore Blvd, Suite 105, Tampa, FL 33607 | D-50 |
| **Additional Defendant** | Name: Gunnallen Financial, Inc.<br>Address: 1000 South Federal Highway, Suite 200, Fort Lauderdale FL 33316,  Soneet R. Kapila, Liquidation Agent | D-51 |
| **Additional Defendant** | Name: Grubb & Ellis Company  -- Corporation Service Company (Registered Agent)<br>Address: 2711 Centerville Road, Suite 400, Wilmington,  DE 19808 | D-52 |
| **Additional Defendant** | Name: Grubb & Ellis Securities, Inc.<br>Address: Corporation Service Company - Agent -2710 Gateway Oaks Drive, suite 150N, Sacramento, CA 95833 | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at  www.jud.ct.gov  under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at  www.jud.ct.gov  under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly.  **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court<br>☐ Assistant Clerk | Name of Person Signing at Left<br>**Robert J. Nichols** | Date signed<br>**June 26, 2012** |
|---|---|---|---|

If this Summons is signed by a Clerk:

a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date<br>**06/26/2012** | |
|---|---|---|---|
| Name and address of person recognized to prosecute in the amount of $250<br>**Katharine F. M. Nichols, 21 West Main Street, Waterbury, CT 06702** | | | |
| Signed *(Official taking recognizance, "X" proper box)* | ☒ Commissioner of the Superior Court<br>☐ Assistant Clerk | Date<br>**06/26/2012** | Docket Number |

(Page 1 of 2)

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

STATE OF CONNECTICUT
**SUPERIOR COURT**

JD-CV-2  Rev. 4-97

FIRST NAMED PLAINTIFF *(Last, First, Middle Initial)*
**Bowser, Anthony C.**

FIRST NAMED DEFENDANT *(Last, First, Middle Initial)*
**Goslin, Christopher L.**

| ADDITIONAL PLAINTIFFS | | CODE |
|---|---|---|
| NAME *(Last, First, Middle Initial, if individual)* | ADDRESS *(No., Street, Town and ZIP Code)* | |
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

| ADDITIONAL DEFENDANTS | CODE |
|---|---|
| NAME *(Last, First, Middle Initial, if individual)*    ADDRESS *(No., Street, Town and ZIP Code)* | |
| Thompson,  Anthony W. - TNP Securities, LLC, 1900 Main Street, Suite 700, Irvine, CA 92614 | 54 |
| Voorhies, Talle A. - 1900 Main Street, Suite 700, Irvine, CA 92614 | 55 |
| Landefeld, Jennifer L. - Centaurus Financial, Inc., 2300 E. Katella Avenue, Suite # 200, Anaheim, CA 92806 | 56 |
| Mccrar, Glenn S. - Alchemy Alternatives, Inc., 777 Mariner's Island Blvd, San Mateo, CA 94404 | 57 |
| U.S. Advisor, LLC - CT Corporation System (Agent) 1200 South Pine Island Road, Plantation FL 33324 | 58 |
| U.S. Select Securities LLC - James M. Hickey President, 111 Corporate Drive, Suite 245, Ladera Ranch, CA 92694 | 59 |
| U.S. Commercial, LLC - H. Michael Schwartz, President, 111 Corporate Drive, Suite 210, Ladera Ranch, CA 92694 | 60 |

| NAME / ADDRESS | CODE | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| NNN Las Colinas Highlands, LLC - National Registered Agents, Inc. (Agent), 160 Greentree Drive Suite 101, Dover, DE 19904 | 61 | |
| Fontaine Business Park, LLC - The Corporation Trust Company (Agent), 1209 Orange Street, Willmington, DE 19801 | 62 | |
| Schwartz, H. Michael,  Strategic Capital Holding, LLC, 111 Corporate Drive, Suite 120, Landera Ranch, CA 92694 | 63 | DOCKET NO. |

**CIVIL SUMMONS-Continuation**

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2  Rev. 4-97

STATE OF CONNECTICUT
**SUPERIOR COURT**

FIRST NAMED PLAINTIFF *(Last, First, Middle Initial)*
**Bowser, Anthony C.**

FIRST NAMED DEFENDANT *(Last, First, Middle Initial)*
**Goslin, Christopher L.**

### ADDITIONAL PLAINTIFFS

| NAME *(Last, First, Middle Initial, if individual)*    ADDRESS *(No., Street, Town and ZIP Code)* | CODE |
|---|---|
| | 03 |
| | 04 |
| | 05 |
| | 06 |
| | 07 |
| | 08 |
| | 09 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |

### ADDITIONAL DEFENDANTS

| NAME *(Last, First, Middle Initial, if individual)*    ADDRESS *(No., Street, Town and ZIP Code)* | CODE |
|---|---|
| Fitzgerald, Kevin S. - Five Financial Plaza, Suite 205, NAPA, CA 94558 | 54 |
| Hickey, James M., Select Capital Corporation, 111 Corporate Drive, Suite 245, Ladera Roach, CA 92694 | 55 |
| Frueh, Richard A. - J.P. Turner & Company, L.L.C, 550 N. Reo Street, Suite 300, Tampa, FL 33609 | 56 |
| Ellis, Marc, Laidlaw & Company (UK) LTD, 90 Park Avenue, 31st Floor, New York, NY 10016 | 57 |
| Gunn, Donald J. Jr., - International Assets Advisory, LLC, 2502 Rocky Point, Suite 550, Tampa, FL 33607 | 58 |
| | 59 |
| | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

**CIVIL SUMMONS-Continuation**

RETURN DATE:     July 31, 2012          :          SUPERIOR COURT

ANTHONY C. BOWSER, AND                  :          J.D. OF MIDDLESEX
JOAN BOWSER                             :
                                        :          AT MIDDLETOWN
VS.                                     :
                                        :
CHRISTOPHER GOSLIN, EL AL               :          JUNE 26, 2012


# COMPLAINT

**FIRST COUNT: (Breach of Contract)**

1.  At all times relevant to this Complaint, the Plaintiffs Anthony C. Bowser and Joan Bowser were married and were residents of the State of Connecticut, residing at 476 Main Street, Old Saybrook, Connecticut 06476.

2.  At all times relevant to this Complaint the Defendant Christopher Goslin was a registered General Securities Representative and a General Securities Principal, employed as an agent by the Defendant Gunnallen Financial, Inc. and working from an office in Tampa, Florida.

3.  At all times relevant to this Complaint the Defendant Gunnallen Financial, Inc. was a Securities Broker Dealer with administrative offices in Tampa, Florida.

4.  At all times relevant to this Complaint "Las Colinas Highlands" was a piece or parcel of commercial real estate, consisting of a 199,435 sq office building on approximately 6 acres, located at 6191 State Highway 161, Irving, Texas, 75038.

5.  At all times relevant to this Complaint "The Heights at Peachtree Creek" was piece or parcel of commercial real estate, consisting of a 340 Unit apartment complex located at 3001 Northeast Expressway in Atlanta, Georgia 30345.

6. At all times relevant to this Complaint "Fontaine Business Park" was a piece or parcel of commercial real estate, consisting of four buildings totaling approximately 253,038 sq ft of rentable space, located at 300, 400, 200 and 201 Arbor Lake Drive, Columbia, South Carolina 29223.

7. In May 2006 Triple Net Properties, LLC (a Virginia Limited Liability Company) was the organizer, sponsor and promoter of a certain securities offering which was being made to fund the purchase of said property known as "Las Colinas Highlands". This offering was being made pursuant to an offering memorandums and addendum: "Confidential Private Placement Memorandum, NNN Las Colinas Highlands, LLC, dated May 5, 2006", and "Confidential Private Placement Memorandum Tenant In Common Interests in Las Colinas Highlands Addendum, dated May 5, 2006". Subsequently Triple Net Properties, LLC merged with the Defendant Grubb & Ellis Company (Grubb & Ellis) a Delaware Corporation.

8. This offering was structured in part, as a tenants in common offering, around a newly created Delaware limited liability company, the Defendant Las Colinas Highlands, LLC. The project was controlled and managed by the Triple Net Properties now Grubb & Ellis.

9. This offering was syndicated by the NNN Capital Corp a Securities Broker Dealer (the Managing Broker Dealer) this company was acquired by Grubb & Ellis in its merger with NNN Capital Corp and subsequently became the Defendant Grubb & Ellis Securities, Inc. a Securities Broker Dealer incorporated in California, with its last principal administrative office in Santa Ana, California. NNN Capital Corp was an affiliate of Triple Net Properties, LLC, later as Grubb & Ellis Securities, Inc it became a subsidiary of Grubb & Ellis.

10. At all times relevant to this Complaint the Defendant U.S. Advisors LLC, was a Virginia limited liability company with administrative office in Santa Ana, California, and was the organizer, sponsor and promoter of a of a certain securities offering which was being made to fund the purchase of said property known as "The Heights at Peachtree Creek". This offering was being made pursuant to a "Confidential Private Placement Memorandum USA, Peachtree Creak, DST", dated April, 2006".

11. This offering was structured as a percentage interest in a newly created Delaware Statutory Trust, the Defendant USA, Peachtree Creak, DST. The project was controlled and managed by the Defendant U.S. Advisors LLC.

12. This offering was syndicated by the Defendant U.S. Select Securities LLC (the Managing Broker Dealer) a Virginia, limited liability company, which was a wholly owned subsidiary of U.S. Advisors LLC, with its last principal administrative office in Santa Ana, California.

13. In the Spring of 2006 the Plaintiffs Anthony C. Bowser and Joan Bowser, were retired and were residing at their home in Connecticut. They had sold a condominium in Florida and were looking for advice on investing the proceeds from the sale of this property.

14. In the spring of 2006 the Plaintiffs attended a program where lectures were being given on various investment topics. One of the attendees mentioned to the Plaintiffs TICs or "tenants in common" investment structures.

15. The Plaintiffs asked where they could get more information on TICs and were given the name, number and address of the Defendant Christopher Goslin (a securities broker in Tampa Florida).

16. The Plaintiffs called Mr. Goslin by telephone from Connecticut. They told him they had heard about TICs at a seminar and had been given his name as someone with knowledge of

this investment structure. They also told him their investments had always been managed by others, they were retired and they were looking for a conservative and safe income generating investment.

17. Defendant Christopher Goslin told the Plaintiffs that he believed a he had a number of investments which would conform to what they were looking for and he believed a TIC may be right for them.

18. Mr. Goslin was also an investment advisor operating this business under the trade name Goslin Associates. During his business transactions with the Plaintiffs he used the trade name Goslin Associates and did not inform the Plaintiffs he was associated with the broker-dealer Gunnallen Financial, Inc. nor that these transaction would be being made by Gunnallen Financial, Inc.

19. Mr. Goslin mailed the Plaintiffs several real estate offering memorandums and suggested the Plaintiffs take a close look at the "Las Colinas Highlands" being offering by Triple Net Properties and "The Heights at Peachtree Creek" being offering by U.S. Advisors LLC.

20. Mr. Gosling told the Plaintiffs both of these offerings were for very high quality properties and that both Triple Net Properties and U.S. Advisors LLC were large well established companies with sound management with good reputations.

21. After receiving the offering documents the Plaintiffs talked to Mr. Gosling by telephone and expressed an interest in both the Las Colinas Highlands and The Heights at Peachtree Creek offerings. The Plaintiffs asked if it would be possible to see the properties. The Plaintiffs also inquired about the investment's safety because the funds they would be investing were their savings for retirements and they couldn't afford to take risks with this money.

22. Mr. Goslin told the Plaintiff he would arrange for them to see the properties and assured them, that although real estate offering memorandums always had risk factors, they really didn't have to worry about them. These were Class A properties and Class A companies with very reputable management teams. These were very safe investments and he would not be recommending them if they weren't.

23. Mr. Goslin arranged for the Plaintiffs to travel to Texas and Georgia, where they were meet by representatives of the companies, to view and tour the properties.

24. After returning to Connecticut the Plaintiffs called Mr. Goslin and told him they liked both properties.

25. Mr. Goslin took the Plaintiff's financial and personal information and arranged the Plaintiffs to receive subscriptions agreements, contracts and other related documents. Part or this document package included investor suitability materials, which included, or should have included, financial statement forms, personal information about the plaintiffs and information about their investment objectives, and risk tolerance. This information was or should have been utilized for the purpose of determining the Plaintiff's investor suitability.

26. All of the offering documents were sent to the Plaintiffs at their address in Connecticut, were executed in Connecticut and sent back to the issuers or their agents. Said actions constitute a sale of securities in Connecticut under the provisions of CGS § 36b-33.

27. On July 6 2006 the Plaintiffs wired $300,000 Three Hundred Thousand Dollars for the purchase of an interest in "The Heights at Peachtree Creek" and the Plaintiffs received a letter from Kevin Fitzgerald, President of U.S. Advisors, dated July 18, 2006 informing them that the property had closed on July 14, 2006 and they had acquired their interest in the property as of said date.

28. On July 10, 2006 the Plaintiffs wired $506,500 Five Hundred Six Thousand Five Hundred Dollars for the purchase of an interest in "NNN Las Colinas Highlands, LLC" and the Plaintiffs received notice that the transaction was completed on July 21, 2006.

29. The Las Colinas Highlands purchase agreement was made with the Plaintiffs as individuals, however as part of the tenants in common investment structure for Las Colinas Highlands, the issuers created individual limited liability company for each investor. In the Las Colinas Highlands project, a limited liability company known as NNN Las Colinas 25, LLC was created for the Plaintiff Joan Bowser and a limited liability company known as NNN Las Colinas 24, LLC was created for the Plaintiff an Anthony C. Bowser.

30. All of the Securities Broker Dealers, Principals and Representatives named herein are, or were at the time, registered with, and subject to, the standards of conduct, rules and regulations established by the Securities Industry self regulatory organizations, the "National Association of Securities Dealers" (NASD) now the "Financial Industry Regulatory Authority" (FINRA) and to the laws, regulations and rules established by the Securities Exchange Commission (SEC) and the "Blue Sky" laws, regulations and rules of the States where purchasers resides. In this the case the State of Connecticut and the Connecticut Department of Banking, Securities Division.

31. The Companies offering the securities described above and their management, were subject to the laws, regulations and rules established by the Securities Exchange Commission (SEC) and for sales to Connecticut residence, to the "Blue Sky" laws, regulations and rules of the State of Connecticut and the Connecticut Department of Banking, Securities Division.

32. Connecticut General Statutes § 36b -29 (c ) imposes upon any person selling securities in this state including, issuers and persons directly or indirectly controlling a liable person,

including partners, officers, directors and every other person occupying similar status or performing similar functions, including broker dealers or agents, the duty and obligation to insure said securities are sold in compliance with Connecticut Securities laws and imposes personal liability upon such persons for violation of the same.

33. Further by offering such securities through Securities Broker Dealers and their Representatives, the Companies offering these securities agreed and were required to offer such securities in accordance with the standards of conduct, rules and regulations established by the Securities Industry self regulatory organizations, the "National Association of Securities Dealers" (NASD) now the "Financial Industry Regulatory Authority" (FINRA).

34. In accordance with the standards of conduct, rules and regulations established by the Securities Industry, a broker offering a security has an affinitive duty to inquire into the circumstance of the Buyer, to make recommendations based upon suitability, and to refuse to sell a security if the Buyers does not meet suitability requirements and standards.

35. Both the Private Placement Memorandums for USA, Peachtree Creak, DST", and NNN Las Colinas Highlands, LLC, contained provisions stating that in order to purchase interests, buyers must meet investment suitability requirements.

36. In accordance with the Securities Law and regulations of the State of Connecticut in order for a security to be sold to residences of this State, the offering must meet the certain Legal requirements these include:

     a.  That the agent selling said securities be registered with the Connecticut Banking Department Securities Division;

b. That the securities being sold are either registered with the State Banking Department or sold under an exemption from registration;

c. That the Banking Commissioner be notified that sales are being made to Connecticut residences;

d. That statutory fees be paid to the Banking Department Securities Division;

e. That the Banking Commissioner be appointed agent for service of process;

f. That the Banking Commissioner be provided with information concerning the offering, its issuer and the management and promoters of the offering;

g. For offering sold under exemptions from registration that the Commissioner be provided information regarding sales in this State including: the date of first sale, the number of Connecticut purchasers, the dollar amount of securities sold, and the name of the Selling agents and broker dealers receiving commissions;

h. Connecticut's securities law also makes it unlawful in the sale of a security to make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or engage in any act practice or course of business which operates or would operate as a fraud or deceit upon any person.

37. The Defendants in offering to sell securities to the Plaintiff made both an express and implied warranties to the Plaintiffs, that: the securities could be legally sold to the plaintiffs as Connecticut residence and that such sale was not in violation of Connecticut securities law, that the said securities met the Plaintiffs' investment objectives, that Defendants (in accordance with the rules and regulations of the securities industry) had reviewed the

Plaintiffs' financial information and other information including the Plaintiffs' risk tolerance, investment experience, investment objectives, age, employment – retirement status, and that the Plaintiffs met the investor suitability requirements for this offering, that the securities were a safe investment, that the selling broker was Goslin & Associates, and that the issuers management were competent and of good reputation.

38. The Defendants further warranted that (in accordance with the rules and regulations of the securities industry) and applicable securities law, that the Defendants provided the Plaintiffs with all relevant facts to allow the Plaintiffs to make an informed investment decision and that such information was true and not misleading.

39. The Defendants breached said contract and warranties in the following manner:

    a. The Defendant Christopher Goslin, the selling agent, (who sold said securities on a commission basis), was not registered with the Securities Division of Connecticut State Bank as required by CGS 36b-2 through 36b-34 and could therefore not lawfully offer or sell securities in this State.

    b. The Defendant Selling Broker Dealer, the Defendant syndicating Broker Dealers (all of whom received commissions on the sales) and the Defendant issuers, and organizers, could not affect a lawful sale in Connecticut unless the selling agent was registered with the Connecticut Department of Banking - Securities Division and any such sale constituted a violation of CGS 36b-6(b).

    c. The Securities for the "Las Colinas Highlands" were unlawfully sold and/or offered for sale in Connecticut in violation of CGS 36b-16, in that said securities were not registered with the SEC, nor registered with the State of Connecticut Banking Commission nor did the Defendants take the required actions under CGS

36b-21 to allow said securities to be sold as a covered security nor was said security under any of Connecticut's other exemptions from registration.

d.  Based upon the information submitted and circumstances of the Plaintiff including: (1) their age, (2) the fact they were retired, (3) their risk tolerance (conservative), (4) their investment objectives - safe retirement income and (5) their available investment capital, placing over $800,000 in two real estate investments described in their offering memorandums as "high risk" was a totally unsuitable investment and a violation of the rules and standards of the securities industry and the representation of the issuers set forth in the offering memorandum.

e.  The defendant Christopher Goslin failed to inform the plaintiffs he was a registered with an agent for Gunnallen Financial, Inc. and misrepresented that the Plaintiffs were investing with his investment advisor firm, Goslin & Associates.

f.  Defendants misrepresented the general safety of the investments to the Plaintiffs.

g.  The Defendants misrepresented said the investments conformed to the Plaintiff investment objectives, the purchase of a safe, conservative investment delivering secure retirement income.

h.  The Defendants in the Las Colinas Highlands offering, knew or should have known of the following risks but omitted and failed to disclose said material facts: That: (1) Defendant Triple Net Properties, LLC and its related and successor entities were financing multiple projects with the same lender. Therefore a default or financial problems with other projects could impair management's ability to negotiate with the lender and would impair management's ability to

negotiate an extension of the Las Colinas mortgage when the loan became due; (2) In the event of problems with multiple projects, management would attempt to restructure the loan package for several projects to the disadvantage of the investors in the Las Colinas; (3) That the Las Colinas loan and mortgage under Texas law were subject to a summery non judicial foreclosure procedure allowing the lender to retake the property in 30 days without a judicial review; (4) That the Las Colinas was subject to a five year loan and that the lender could foreclosure at the end of this time period even though the project had a positive cash flow and was paying principal and interest in accordance with the terms of the loan.

i.  The Defendants in the Peachtree Creek offering memorandum were required to disclose adverse information concerning management within 5 years of the offering or for longer periods if relevant.  The Defendants in The Heights at Peachtree Creek offering memorandum failed to disclose a series of NASD regulatory actions and law suits filed against the following members of management: Kevin Scott Fitzgerald, Chairman and President of U.S. Advisors, Glenn McCrae, Executive Vice President of U.S. Advisors and President of U.S. Select Securities and H. Michael Schwartz, Co- President of U.S. Advisors and Registered Principal of U.S. Select Securities.

j.  The Defendants in Peachtree Creak, DST offering knew or should have known of factors which could place the project in jeopardy and require the property to be sold in less than one year but failed to disclose said factors and misrepresented the safety of said investment to the Plaintiffs.

40. The Plaintiffs invested in the USA, Peachtree Creak, DST", and NNN Las Colinas Highlands, LLC, offerings in reliance upon the representations of the Defendants both written and oral, and in reliance that the Defendants would comply with applicable State and Federal securities laws, rules and regulations and with the standards, rules and requirements of the securities industry.

41. By November 2007 the property known as The Heights at Peachtree Creek was in financial difficulty and management elected, or were being forced, to sell the property.

42. The Plaintiffs were informed by the Defendant U.S. Advisors and the Defendant Christopher Goslin that, The Heights at Peachtree Creek was being sold and the Plaintiffs would lose all or a substantial portion of their investment in the sale, or they could exchange their interest in The Heights at Peachtree Creek for an interest in a new offering, Fontaine Business Park, LLC which would involve a smaller loss.

43. The Plaintiffs elected to accept said exchange to avoid a greater loss and were given a credit of $269,043.47 on the purchase of an interest in Fontaine Business Park in exchange for their interest in "The Heights at Peachtree Creek", resulting in a loss of $ 30,956.53.

44. All of the offering and sales documents for Fontaine Business Park were sent to the Plaintiffs at their address in Connecticut, were executed in Connecticut and sent back to the issuers or their agents.  Said actions constitute a sale of securities in Connecticut under the provisions of CGS § 36b-33.

45. In 2011 the Plaintiffs were informed by management of the Las Colinas Highlands project and by the attorneys for mortgage lender PNC Bank, National Association, (PNC Bank) that the 5 year note and mortgage on the Las Colinas Highlands had matured.  Despite the property having a positive cash flow and generating sufficient income to make the mortgage

payments, PNC Bank demanded a six million principal payment as a condition of extending the loan.

46. The Las Colinas Highlands project management attempted to negotiate a loan restructure with the lender involving not only the Highlands loan but loans on other properties which did not have a positive cash flow.

47. The lender rejected said proposals and in February 2012 PNC Bank foreclosed on the Las Colinas Highlands property in a non-judicial foreclosure.

48. As a result said misrepresentations, action, omissions and breaches of duly of the Defendants above, all of which also constitute breaches of contract and warranties, the Plaintiffs sustained the lost the majority of the funds they invested with the defendants.

SECOND COUNT

(Obligation of Securities Principals and Management)
*Las Colinas Highlands Offering, and The Heights at Peachtree Creek Offering*

The Plaintiffs hereby make Paragraphs 1 through 48 of the First Count corresponding paragraphs of the Second Count

49.    The standards of conduct, rules and regulations for the securities industry as established by the, the self regulatory organizations, the "National Association of Securities Dealers" (NASD) now the "Financial Industry Regulatory Authority" (FINRA), impose upon broker dealers, and upon the principals of those Broker Dealers, a duly and obligation to establish procedures to supervise the activities of their agents and to insure a firm is conducting it business in compliance with securities laws, rules, regulations and the standards of conduct for the securities industry.

50.    Connecticut General Statutes § 36b -29 (c ) imposes a duty upon any person selling securities in this State including, issuers and persons directly or indirectly controlling a liable person, including partners, officers, directors and every other person occupying similar status or performing similar functions, including broker dealers or agents; the obligation to insure said securities are sold in compliance with Connecticut Securities laws and imposes personal liability upon such persons for violation of the same.

51.    The following Defendants were senior management of the Issuers, organizers and /or their respective selling and/or syndicating broker dealers when the "Las Colinas Highlands", and "The Heights at Peachtree Creek" offerings, were sold to the Plaintiffs.    Said Defendants had control of their respective firms and the obligation to insure said securities were lawfully sold and that proper and effective supervisory and compliance procedures were established and implemented.

As to the Selling Broker Dealer - Gunnallen Financial, Inc.
*For the Las Colinas Highlands "and "The Heights at Peachtree Creek" Offerings*

Defendant, Richard Frueh,  -  CEO of Gunnallen Financial, Inc.

Defendant Donald J. Gunn, Jr., -  President of Gunnallen Financial, Inc.

Defendant Marc Ellis, -   CCO of Gunnallen Financial, Inc.

As to Triple Net Properties LLC the organizer of the offering and NNN Capital Corp
 Syndicating Broker Dealers  .
*For the Las Colinas Highlands Offering*

Defendant, Anthony W. Thompson -  Chairman, CEO and Board Member of
Triple Net Properties LLC and Chairman of NNN Capital Corp
Mr. Thompson was named in the "Officers and Senior Management" section of the
Offering Memorandum.

Defendant, Jennifer Landefeld, - Chief Compliance Officer of NNN Capital Corp
Ms. Landefeld was named in the "Officers and Senior Management" section
of the Offering Memorandum.

Defendant Talle A. Voorhies - Vice President and Board Member of
Triple Net Properties LLC and Executive Vice President of NNN Capital Corp
with due diligence and compliance responsibilities. Ms. Voorhies was named
in the "Officers and Senior Management" section of the Offering Memorandum.

As to U.S. Advisor LLC the organizer of the offering and
U.S. Select Securities LLC U.S. the Syndicating Broker Dealers
*For "The Heights at Peachtree Creek" Offering*

Defendant, Kevin Scott Fitzgerald - Chairman and President of U.S. Advisor LLC,
and General Securities Principal of U.S. Select Securities LLC. Ms. Fitzgerald was
named in the "Management" section of the Offering Memorandum.

Defendant, Glenn McCrae - Executive Vice President and Chief Operating Officer of
U.S. Advisor LLC and President of U.S. Select Securities LLC.
Mr. McCrae was named in the "Management" section of the Offering Memorandum.

Defendant, H. Michael Schwartz - Co-President of U.S. Advisor and Registered Principal
of U.S. Select Securities LLC. Mr. McCrae was named in "Management" section of
the Offering Memorandum.

James Martin Hickey - Senior Vice President and National Sales Director of
U.S. Advisor , LLC and General Securities Principal of U.S. Select Securities LLC.
Mr. Hickey was named under in section "Management" in the Offering Memorandum.

52.    The above defendants, by virtue of the duties and obligations undertaken in association

with the sale of said securities, including the duties and obligations imposed upon them by the

NASD now FINRA and under Connecticut securities laws, rules and regulations, contracted with

and warranted to the Plaintiffs, they would establish procedures to effectively supervise the

activities of their respective companies and firms, the activities of said companies' and firms'

agents, and establish compliance procedures to insure their firms were conducting business and

said securities were sold in compliance with applicable securities laws of the State of Connecticut and the rules, regulations and the standards of conduct for the securities industry.

53.  Said Defendants breached said warranties, by participation in, and allowing, the sale of said securities in violation of Connecticut securities laws, rules and regulations and the standards of conduct for the securities industry, by failure to supervise, and by failure to establish and implement effective compliance procedures.

54.    As the result of the breaches of contract and warranties, the Plaintiffs sustained the lost the majority of the funds they invested with the defendants


THIRD COUNT (Breach of Contract - Exchange)

The Plaintiffs hereby make Paragraphs 1 through 54 of the Second Count corresponding paragraphs of the Third Count.

55. In November 2007, the Defendant U.S. Commercial LLC, (a subsidiary of said U.S. Advisors LLC) was the organizer, sponsor and promoter of a certain securities offering which was being made to fund the purchase of said property known as "Fontaine Business Park".  This offering was being made pursuant to a "Confidential Private Placement Memorandum, Fontaine Business Park, LLC, dated November, 2007".

56. This offering was structured in part, as a tenants in common offering, around a newly created Delaware limited liability company, the Defendant Fontaine Business Park, LLC. The project was controlled and managed by Defendant Fontaine Business Park, LLC and the Defendants, U.S. Commercial LLC and U.S. Advisors, LLC, participatied in the organization, control and management of the project.

57. This offering was syndicated by the Defendant U.S. Select Securities LLC (the Managing Broker Dealer) a Virginia, limited liability company, which was a wholly owned subsidiary of U.S. Advisors LLC, with its last principal administrative office in Santa Ana, California.

58. By the fall of 2007 the property known as "The Heights at Peachtree Creak" was having financial problems and the projects management elected, or were forced, to sell the property. U.S. Advisors LLC offered the investors in the "The Heights at Peachtree Creak" property, including the Plaintiffs, an exchange of securities for their interests in "Fontaine Business Park".

59. Such exchange constituted a sale of securities. In making said exchange and sale, said Defendants, had the same obligations to the Plaintiffs as stated in Paragraphs 30, 31, 33, 34, 36 and 37 of the First Count, which are made corresponding paragraphs of the Third Count.

60. The Private Placement Memorandum for "Fontaine Business Park", contained provisions stating that in order to invest, buyers must meet investment suitability requirements.

61. The Selling Broker Dealer, offering said exchange sale, was Defendant Gunnallen Financial, Inc. and the sale was made by their agent, the Defendant Christopher Goslin however said Christopher Goslin was not registered with the State of Connecticut Department of Banking Securities Division at the time of said sale-exchange.

62. Said Defendants in offering to sell and exchange securities in "Fontaine Business Park", to the Plaintiff, made both an express and implied warranties to the Plaintiffs that: the securities could be legally sold to the plaintiffs as Connecticut residence, that the Plaintiffs meet the investors suitability requirement for purchasers and that the Defendants had disclosed to the Plaintiffs all relevant facts to allow the Plaintiffs to make an informed decision on investing.

63. The Purchase agreement was made with the Plaintiffs, however as part of the tenants in common investment structure for Fontaine Business Park, the issuers created in individual limited liability company for each investor. A limited liability company known as Fontaine Business Park 19, LLC was created for the Plaintiff an Joan Bowser and a limited liability company know as Fontaine Business Park 16, LLC was created for the Plaintiff Anthony C. Bowser.

64. The Defendants breached their contract and said warranties in the following manner:

   a. The Defendant Christopher Goslin, the selling agent, (who sold said securities on a commission basis), was not registered with the Securities Division of Connecticut State Bank as required by CGS 36b-2 through 36b-34 and could therefore not lawfully offer or sell securities in this state.

   b. The Defendant Selling Broker Dealer, the Defendant syndicating Broker Dealers (all of whom received commissions on the sales) and the Defendant issuers, and organizers, could not affect a lawful sale in Connecticut unless the selling agent was registered with the Connecticut Department of Banking - Securities Division and any such sale constituted a violation of CGS 36b-6(b).

   c. The defendant Christopher Goslin failed to inform the plaintiffs he was acting as an agent for Gunnallen Financial, Inc. and misrepresented that the Plaintiffs were dealing with his investment advisor firm, Goslin & Associates.

   d. The Defendants misrepresented the safety of the investments to the Plaintiffs

   e. The Defendants misrepresented said the investments conformed to the Plaintiff investment objectives, "the purchase of a safe, conservative investment delivering secure retirement income".

f.   Based upon the information submitted and circumstances of the Plaintiff including: (1) their age, (2) the fact they were retired, (3) their risk tolerance (conservative) and (4) their available investment capital, this investment alone would have been unsuitable and a violation of the rules and standards of the securities industry and the representation of the issuers and set forth in the offering memorandum. Combined with the prior transactions by the same Defendants it represents a continuation of the said prior violations.

g.   The Defendants in their offering memorandum were required to disclose certain adverse information concerning management within 5 years of the offering or for longer periods if relevant.  The Defendants in Fontaine Business Park offering memorandum failed to disclose a series of NASD regulatory actions and law suits filed against the following members of management, Kevin Scott Fitzgerald, Glenn McCrae and H. Michael Schwartz, including an order dated September 14, 2006 by State of Ohio security regulatory authority, denying a securities salesperson application to the Defendant Kevin Scott Fitzgerald on the bases of three separate NASD actions and seven separate law suites with a finding the applicant was "Not of Good Business Repute".

h.   The Defendants misrepresented to the Plaintiffs that the organizers and issuers management were of good reputation.

65. The Plaintiffs invested in the Fontaine Business Park, offerings in reliance upon the representations of the Defendants both written and oral, and in reliance that the Defendants would comply with applicable State and Federal securities laws, rules and regulations and with the standard and rules and requirement of the securities industry.

66. Fontaine Business Park (the subject of said offering) is currently experiencing financial difficulties and the Property and is not distribution income.

67. As a result of said misrepresentations, action, omissions and breaches of duly of the Defendants above, all of which also constitute breaches of contract and warranties, the Plaintiffs were unlawfully sold securities and suffered loss.   Further they have a disproportionate percentage of their assets invested in a real estate project with no liquidity and which is producing no retirement income.

FOURTH COUNT

(Obligation of Securities Principals and Management)
*Fontaine Business Park*

The Plaintiffs hereby make Paragraphs 1 through 67 of the Third Count corresponding paragraphs of the Fourth Count

68.    The standards of conduct, rules and regulations for the securities industry as established by the, the self regulatory organizations, the "National Association of Securities Dealers" (NASD) now the "Financial Industry Regulatory Authority" (FINRA), impose upon broker dealers, and upon the principals of those Broker Dealers, a duly and obligation to establish procedures to supervise the activities of their agents and to insure a firm is conducting it business in compliance with securities laws, rules, regulations and the standards of conduct for the securities industry.

69. Connecticut General Statutes § 36b -29 (c ) imposes a duty upon any person selling securities in this State including, issuers and persons directly or indirectly controlling a liable person, including partners, officers, directors and every other person occupying similar status or performing similar functions, including broker dealers or agents the

obligation to insure said securities are sold in compliance with Connecticut Securities laws and imposes personal liability upon such persons for violation of the same.

70. The following Defendants were senior management of the Issuers, organizers and /or their respective selling and/or syndicating broker dealers in November 2007, when the "Fontaine Business Park" offerings, was sold to the Plaintiffs.   Said Defendants had control of their respective firms and the obligation to insure said securities were lawfully sold and that proper and effective supervisory and compliance procedures were established and implemented.

As to Selling Broker Dealer - Gunnallen Financial, Inc.
*For "Fontaine Business Park" Offerings*

Defendant, Richard Frueh CEO of Gunnallen Financial, Inc

Defendant Donald J. Gunn, Jr. President of Gunnallen Financial, Inc

Defendant Marc Ellis  CCO of Gunnallen Financial, Inc.

As to U.S. Advisor LLC and U.S, Commercial the organizer of the offering and
U.S. Select Securities LLC U.S. the Syndicating Broker Dealers
*For "Fontaine Business Park" Offering*

Defendant,  Kevin Scott Fitzgerald -  Chairman and President of U.S. Advisor LLC, and General Securities Principal of U.S. Select Securities LLC.  Ms. Fitzgerald was named in the "Management" section of the Offering Memorandum.

Defendant, Glenn McCrae  Executive Vice President – Chief Operating Officer of U.S. Advisors President U.S. Select Securities LLC.  Mr. McCrae was named in the "Management" section of the Offering Memorandum.

Defendant, H. Michael Schwartz -  President U.S. Commercial, LLC, and Registered Principal of U.S. Select Securities LLC.   Mr. McCrae was named in "Management" section of the Offering Memorandum..

James Martin Hickey -  Senior Vice President and National Sales Director of U.S. Advisor, LLC and a General Securities Principal U.S. Select Securities LLC. Mr. Hickey was named under in section "Management" in the Offering Memorandum.

71.     The above defendants, by virtue of such duties and obligations, including statutory obligations, warranted to the Plaintiffs they would establish procedures to effectively supervise the activities of their respective companies and firms, the activities of the Companies' and Firms' agents, and establish compliance procedures to insure their firms were conducting business in compliance with applicable securities laws of the State of Connecticut and the rules, regulations and the standards of conduct for the securities industry and that said securities would be sold in accordance with said law, rules, regulations and standards.

72.     Said Defendants breached said warranties, by participation in, and allowing, the sale of said securities in violation of Connecticut securities law, by failure to supervise, and by failure to establish and implement effective compliance procedures.

73. As a result of said representations, action, omissions and breaches of duly of the Defendants above, all of which also constitute breaches of contract and warranties, the Plaintiffs suffered loss and have a disproportionate percentage of their assets invested in a real estate project with no liquidity and which is producing no retirement income.


FIFTH COUNT

(Misrepresentation and Fraud)
*"Las Colinas Highlands" "The Heights at Peachtree Creak" and "Fontaine Business Park Offering"*

The Plaintiffs hereby make Paragraphs 1 through 73 of the Fourth Count corresponding paragraphs of the Fifth Count

74. The Defendants sold said securities to the Plaintiffs in all three offerings, "Las Colinas Highlands" "The Heights at Peachtree Creak" and "Fontaine Business Park Offering" in

violation of the Connecticut Securities Act and by use of intentional misrepresentations and/or fraud, including that: (a) the agent selling Christopher Goslin was registered with the Connecticut Banking Department Securities Division and authorized to offer and sell securities in Connecticut, (b) that said securities in the "Las Colinas Highlands Offering" were registered or exempted for registration under Connecticut law or could be otherwise legally sold in this state, (c) that said securities were a safe investment, (d) that said securities conformed to the plaintiffs stated investment objectives, (e) that the Plaintiffs meet the suitability for said investment, (f) that Defendants would review the information submitted by the Plaintiffs and (in accordance the representations of the Offering Memorandum and industry standards of conduct) reject their subscription if the investment were not suitability, (g) that Goslin Associates was the selling broker, (h) that the management were of good reputation, and (i) by failure to disclose and misrepresenting material facts to the Plaintiff.

75.   Said actions constitute a violation of  the Connecticut Securities Act imposing statutory liability for said violation upon any person selling securities in this State including, issuers, broker dealers and agents and for persons directly or indirectly controlling a liable person, including partners, officers, directors and every other person occupying similar status or performing similar functions, including broker dealers or agents.

76.    The sale of said securities by use of intentional misrepresentations and/or fraud, constituted a breach of duty and corresponding breach of contract and breach of warranty.

SIXTH COUNT

Violation of Connecticut Securities Act
Misrepresentation and Fraud
*Fontaine Business Park Offering*

The Plaintiffs hereby make Paragraphs 1 through 76 of the Fifth Count corresponding paragraphs of the Sixth Count

77. The Defendants sold said securities to the Plaintiffs in the "Fontaine Business Park Offering" in violation of the Connecticut Securities Act and by use of intentional misrepresentations and/or fraud, including that: (a) the agent selling Christopher Goslin was registered with the

Connecticut Banking Department Securities Division and authorized to offer and sell securities in Connecticut, (b) that said securities were a safe investment, (c) that said securities conformed to the plaintiffs stated investment objectives, (d) that the Plaintiffs meet the suitability for said investment, (e) that Defendants would review the information submitted by the Plaintiffs and (in accordance the representations of the Offering Memorandum and industry standards of conduct) reject their subscription if the investment were not suitability, (f) that Goslin· Associates was the selling broker, (g) that the management were of good reputation, and (h) by failure to disclose and misrepresenting material facts to the Plaintiff.

78.  Said actions constitute a violation of Connecticut Securities Act imposing statutory liability for said violation upon any person selling securities in this State including, issuers, broker dealers and agents and for persons directly or indirectly controlling a liable person, including partners, officers, directors and every other person occupying similar status or performing similar functions, including broker dealers or agents.  Said statute imposes personal liability for violation upon all persons associated with said sale including: (a) the selling agent - Christopher Goslin, (b) the parties offering said securities - Fontaine Business Park, LLC, U.S. Advisors LLC, and U.S. Commercial, LLC (c) the selling broker-dealer - Gunnallen Financial, Inc., (d) the syndicating broker-dealers U.S. Select Securities LLC, (e) the individuals controlling Gunnallen Financial, Inc - Richard Frueh, Donald J. Gunn, Jr., and Marc Ellis, and the individuals controlling Fontaine Business Park, LLC, U.S. Advisors LLC, and U.S. Commercial, LLC and U.S. Select Securities LLC  Kevin Scott Fitzgerald, Glenn McCrae, H. Michael Schwartz and James Martin Hickey.

79.  The Plaintiffs were unaware of said violations at the time of the purchase of said securities and did not discover the same until the spring of 2012.

80.    By selling said securities to the Plaintiffs in violation of the provisions of the Connecticut Securities Act the above defendants are collectively responsibility for damages under the act including Monetary Damage, a refund of consideration paid, interest at 8% per year from the date of payment, and Reasonable Attorney's fees.

SEVENH COUNT

Connecticut Securities Act
Failure to Comply with Orders

The Plaintiffs hereby make Paragraphs 1 through 80 of the Sixth Count corresponding paragraphs of the Seventh Count

81.    On March 13, 2006 the Connecticut Department of Banking, Securities Division made a finding the selling broker Gunnallen Financial, Inc. had violated the Connecticut Securities Act and said violation had resulted from a failure to establish, enforce and maintain an adequate supervisory system.    The Department ordered the firm cease and desist from regulatory violations, and mandated that the firm implement revised supervisory procedures designed to improve compliance.

82.    The violations listed above could have and should have been prevented were proper supervisory and compliance procedures implemented.

83.    The said failure to implement procedures, constituted a breach of duty by Gunnallen Financial, Inc. and its named management and a corresponding breach of contract and breach of warranty.

EIGHTH COUNT

Failure to Take Notice

The Plaintiffs hereby make Paragraphs 1 through 83 of the Seventh Count corresponding paragraphs of the eighth Count

84.    The Securities the securities industry self-regulating agencies, the National Association of Securities Dealers, NASD now the Financial Regulatory Authority, FINRA provide a Broker Check Service, online records and histories for all Broker/Dealer firms and all Brokers registered with the agency.  This information includes customer complaints, regulatory actions, and legal proceedings concerning said firms and individuals.

85.    These records can be quickly and easily checks and are available to the general public.

86.    Had these records been checked for the selling agent Christopher Goslin the information therein should have caused the Defendants charged with supervision to perform addition due diligence.  This in turn should have resulted in the discovery and prevention of the above violations.

87.    The said failure to perform said due diligence, constituted a breach of duty by all above defendants charged with supervision and and a corresponding breach of contract and breach of warranty.


JURISDICTION SERVICE OF PROCESS⁻

Each of the above defendants have engaged in conduct prohibited or made actionable by CGS Sections 36-2 to 36-34 and by virtue of said conduct have become subject to the jurisdiction of the State of Connecticut and pursuant to the provisions of CGS § 36b-33 h have conferred the Banking Commissioner of the State of Connecticut the equivalent to appointing the commissioner such persons agent for the service of process.

WHEREFORE, the Plaintiffs' claim:

As to the above causes of action stemming from the sale of the Las Colinas Highlands Offering, and The Heights at Peachtree Creek Offering:

    1    Monetary Damages;

    2    Such other relief in law or equity as this Honorable Court in its discretion may award

As to the above causes of action stemming from the sale of the; Fontaine Business Park Offering

    1.    Monetary Damages;

    2    Statutory Damages under the Provisions of CGS § 36b -29 including:

        a.    Monetary Damage;

        b.    a refund of consideration paid;

        c.    Interest at 8% per year form the date of payment;

        d.    Punitive damages

        c    Reasonable Attorney's fees.

    3    Such other relief in law or equity as this Honorable Court in its discretion may award.

Here of fail not, but of this writ, with your doings thereon, make due service and return according to law.

Dated at Waterbury, Connecticut this 26th, day of June, 2012.

THE PLAINTIFFS

By _____
ROBERT J. NICHOLS
Their Attorney

RETURN DATE:    July 31, 2012         :         SUPERIOR COURT

ANTHONY C. BOWSER, AND              :         J.D. OF MIDDLESEX
JOAN BOWSER                          :
                                     :
VS.                                  :         AT MIDDLETOWN
                                     :
                                     :
CHRISTOPHER GOSLIN, EL AL            :         JUNE 26, 2012


## STATEMENT OF AMOUNT IN DEMAND


The amount in demand, exclusive of interest and cost, is greater than $15,000 and includes a
claim for relief in addition to, or in lieu of money damages.


                                     Plaintiffs


                                     by Robert J. Nichols - Their Attorney
                                     21 West Main Street, 4th Floor
                                     Waterbury Conn. 60702
                                     Juris # 042869
                                     Tel.    203-753-5503
                                     Fax.    203-841-0304